THE WESTERN UNION TELEGRAPH COMPANY, Appellant, *v.* AUGUSTUS D. SHEPARD et al., Respondents.

EQUITY — RESERVATION IN DEED OF RIGHT TO RECOVER DAMAGES. While a grant of land carries with it all easements, and the right to recover damages for subsequent injuries thereto passes to the grantee, a reservation in a deed of "all claim or right of action" against an elevated railway company "for any and all injury or damages done to the said property or to the value or uses thereof in the past, present or future by reason of the construction and operation" of the railway, which reservation was made a part of the consideration of the conveyance, is binding upon a subsequent grantee with notice, and equity will decree a recovery by him against the company of all damages accruing after he has acquired title, to be held in trust for the reserving grantor, and a reformation of the deed giving the latter the right to receive the proceeds is unnecessary.

*Western Union Tel. Co.* v. *Shepard,* 49 App. Div. 345, reversed.

(Argued November 20, 1901; decided December 20, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 23, 1900, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The action is in equity in which the plaintiff seeks:

1. Judgment reforming a certain deed, forming part of the chain of title of the premises known as Nos. 70, 72, 74 and 76 Church street in the city of New York, in the particulars hereinafter referred to.

2. Judgment establishing a trust in the present owner of said premises, the defendant Augustus D. Shepard, and in the intermediate owners since the transfer of said premises by the plaintiff, for all damages to said premises, present, past and future, arising from the occupation of the street in front of said premises by the elevated railroad structure of the defendant the Manhattan Railway Company.

3. Judgment that said Augustus D. Shepard account for and pay over to the plaintiff all sums that may be received by him from the defendant the Manhattan Railway

Company on account of the claims or causes of action arising by reason of the maintenance and operation of the elevated railway in front of said premises, including any sum or sums received by him from said company as the valuation of property rights taken, fixed as the alternative to any injunction or in any voluntary settlement or by way of compensation for property condemned by the Manhattan Railway Company under the power of eminent domain, and all sums received by him from it as damages to the rental value of said premises for alleged trespasses upon the same or the easements appurtenant thereto.

4. Judgment that the defendants Augustus D. Shepard and the Manhattan Railway Company be enjoined and restrained from making and completing, without the consent of the plaintiff, any agreement for the adjustment and settlement of the said compensation and damages and for the release or extinction of the easements and property rights infringed by the elevated railway ; also that it be decreed that the said Augustus D. Shepard execute and deliver to the plaintiff, upon payment to him of his reasonable costs and expenses, such instrument or instruments in favor of the defendant the Manhattan Railway Company as may be necessary or proper to carry into effect any compromise or settlement of said compensation and damages that may be made by the plaintiff with the Manhattan Railway Company and to release and extinguish the easements or property rights referred to.

5. Judgment that the defendant Augustus D. Shepard be enjoined and restrained from assigning and conveying the said compensation and damages, and from giving or granting to any person, without the plaintiff's consent, any equity, equitable interest or right of any kind therein, whether in the name of a contingent counsel fee or contingent costs to his attorneys, the defendant Peckham, and from carrying out any contract or agreement made with said defendant Peckham, or any other person, or assigning or conveying the same, or creating or granting any equitable interest therein.

The trial court by its long decision found and decided as follows :

" May 4th, 1872, the plaintiff, the Western Union Telegraph Company, became the owner of the premises described in the complaint, situated on Church street, formerly Nos. 30, 32, 34 and 36 Trinity place, in the city of New York.

" In the year 1877 the Metropolitan Railway Company built an elevated structure in the street in front of said premises, and operated thereon a steam railroad. This elevated railroad and structure, and the operation thereof, obstructed the street and was a damage to the easements appurtenant belonging to abutting owners.

" On the 20th day of May, 1879, the Metropolitan Company leased this railroad to the Manhattan Railway Company, which last-named company operated the railroad as such lessee until May 7th, 1894, when the property and franchises of the Metropolitan Company became merged in the Manhattan Company by a transfer of the entire capital stock of the Metropolitan Company, and the Manhattan Company became the owner of the property, rights, privileges and franchises of the Metropolitan Company, and became liable for, and subject to, all the debts and liabilities of the Metropolitan Company, and all actions then pending against them.

" This elevated railroad structure and the railroad have been maintained and operated in front of these premises without substantial change from the time of the construction in 1879 up to the present. No compensation has ever been made for, nor has any title ever been acquired to easements or property rights appurtenant to these premises.

" The plaintiff continued uninterruptedly in the ownership of these premises from May 4th, 1872, until June 4th, 1888, on which date the property was transferred by deed to the defendant Tubbs. The following reservation clause was inserted therein : ' The party of the first part hereto reserves all claim or right of action against the Metropolitan and Manhattan Elevated Railroad Companies, or either of them, for any and all injury or damage done to the aforesaid property

or to the value or uses thereof in the past, present or future, by reason of the construction and operation of the elevated railroad in front of the said premises, and as they are now constructed and operated.'

"Prior to the execution and delivery of this deed the parties entered into a contract of sale for the same, bearing date April 16th, 1888. This contract is in the usual form, and also contained the following agreement of reservation in respect of the rights of action against the elevated railroad companies, and the damage accruing from the maintenance and operation of the railroad in front of the property: 'It is further agreed and understood, as a condition of this agreement, that the Western Union Telegraph Company reserves all claim or right of action against the Metropolitan and Manhattan Elevated Railroad Companies, or either of them, for any and all injury or damages done to the said property or to the value or uses thereof in the past, present or future, by reason of the construction and operation of the elevated railways in Church street, as they now stand and are now being operated, and the said George W. Tubbs in the purchase of said property, and any and all persons to whom he may convey, accept title, waiving and releasing any and all claims against said railroad company as now constructed and operated, unless more damaging changes shall be made in the structure and operation of said roads.'

"June 4th, 1888, the day he received the deed, Tubbs transferred the property by deed to the defendants Messrs. Levy. It seems that Tubbs was simply a medium through which the transfer was made from the plaintiff to the defendants the Messrs. Levy. Prior to said transfer the defendant Jefferson M. Levy was informed that the Western Union Telegraph Company would reserve in the deed to Tubbs all right or claim for damages growing out of the use of the street in front of the premises in question by the elevated railways, and the operation thereof. He was also informed that it was the intention to transfer the building and lot upon which the building stood, and reserve to the Western Union Telegraph

Company all claims growing out of the use of the street in front thereof by the elevated railroad, the operation thereof, and any damages therefrom.

" September 26th, 1888, the Messrs. Levy transferred the property by deed to the defendant Allen Mitchell. January 17th, 1889, the defendant Mitchell retransferred the property to the Messrs. Levy by deed of that date.

" On March 29th, 1889, the Messrs. Levy conveyed the property to the defendant Shepard. This deed specifically referred to the prior reservation of the easements or right of action for the encroachments thereon, contained in the deed to Tubbs for the benefit of the Western Union Company as follows : ' Damages to the said premises arising by reason of the elevated railroad, as now constructed and operated in front of said premises, have been reserved to the Western Union Telegraph Company, a former owner.'

" When the defendant Shepard purchased the property he knew of the existence of the railroad, and the reservation contained in the deed to Tubbs. The Messrs. Levy excluded from the price paid by the defendant Shepard the value of the easements taken by and then used by the defendant, the Manhattan Railway Company.

" November 14th, 1890, the defendant Shepard began an action against the Metropolitan Railroad Company and the defendant the Manhattan Railway Company to enjoin them from maintaining and operating the said elevated railway in front of these premises ; to compel said defendants to take down and remove the same, and to recover from them damages to the use of these premises arising since March 29th, 1889, the date upon which Shepard acquired title, by reason of the trespass of said railway upon the easements and property rights appurtenant to said premises.

" June 4th the defendant Shepard executed and delivered to the Western Union Telegraph Company a purchase-money mortgage to secure the payment of the sum of $85,000, which was thereafter assigned to, and is now owned by, the defendant Russell Sage, and is an existing lien upon the property.

" The defendant Shepard, before the commencement of this action, repudiated and denied, and now denies, that any rights exist as against him in the nature of a trust relation or otherwise in respect of these transactions, and which in any way precludes him from the prosecution of his action in his individual capacity, and as the full legal and equitable owner of the premises and the easements and property rights thereto and included within the said reservation clause.  He claims to be entitled to such damages and to all damages by reason of the unlawful occupation of the street by the railroad companies since the date of his purchase, and that the plaintiff has no legal or equitable right to any of the avails of that litigation.

" This action is brought by the plaintiff for the purpose of establishing a trust relation between the plaintiff as grantor and certain defendants, including the defendant Shepard, as grantees, to the end that the plaintiff may be enabled to reap the benefit of the litigation between the defendant Shepard and the defendant railroad company for the injury to such easements caused by said continuing trespasses by the elevated road.

" The parties doubtless intended that the plaintiff should have the benefit of the damages to the property, past, present and future, by reason of the operation and maintenance of the elevated railroad in the street, and it was the intention of the grantees to take the land burdened with the elevated road, and which, it was expected, would be a continuing one.

" The parties to the grant intended that the grantees should receive no compensation by reason of such injury, but that the grantor should.  The parties intended that the grantees should take the premises the same as though the elevated railroad company had theretofore acquired a dominant right to maintain and operate its road.  That was to be the extent of the grantees' interest by reason of the grant.  It seems that the purchase price was adjusted upon that theory.

" It was the intention of the parties that the grantor, this plaintiff, should be entitled to receive from the elevated rail-

road compensation for all damages occasioned to the property, both rental and fee damages, by reason of the operation and maintenance of the elevated road.

" The parties supposed that the reservation would be effectual to carry out their intent. It seems it was not. The reservation was inoperative, because it attempted to reserve a right of action for damages to premises, the title to which was vested in the grantee.

" Notwithstanding the language of the reservation, the right to recover damages resided in the grantee, the same as though no attempted reservation had been made.

" There was no express agreement whereby the grantee was made a trustee for the grantor. The reservation being ineffectual, plaintiff cannot enforce any claim against the railroad company, and there was no express agreement whereby the grantee undertook to enforce the claim for the benefit of the plaintiff.

" It is not claimed that the trust here attempted to be established arises by reason of the fraudulent, wrongful or unlawful act or acts of the grantee.

" Under such circumstances the law will not imply a trust in favor of the plaintiff."

*Julien T. Davies, Alfred A. Wheat* and *Rush Taggart* for appellant. The equitable effect of the reservation clause is to make the defendant Shepard a trustee for the benefit of the plaintiff of all damages recovered from the Manhattan Railway Company by reason of the occupation of the street in front of the premises in controversy by the elevated railroad of that company. (*Pegram* v. *N. Y. El. R. R. Co.*, 147 N. Y. 135; *Shepard* v. *Met. El. Ry. Co.*, 147 N. Y. 685; *Field* v. *Mayor, etc.*, 6 N. Y. 179; *Stover* v. *Eycleshimer*, 3 Keyes, 620; *Carver* v. *Creque*, 46 Barb. 507; *Roberts* v. *N. Y. El. R. R. Co.*, 128 N. Y. 455; *Thompson* v. *Manh. Ry. Co.*, 130 N. Y. 360; *Craig* v. *Wells*, 11 N. Y. 321; *Pappenheim* v. *Met. El. Ry. Co.*, 128 N. Y. 436.) The decisions upon the motion of the plaintiff to be joined as a party to the suit of

Shepard against the elevated railroad companies are not decisive of the issues in this action. (*Riggs* v. *Pursell*, 74 N. Y. 378; *Dutton* v. *Smith*, 10 App. Div. 566; *Beards* v. *Wheeler*, 76 N. Y. 213; *Foote* v. *Lathrop*, 41 N. Y. 359.) If a reformation of the deed from the plaintiff to the defendants Levy is necessary to render effective the agreement made between them, such reformation should be decreed by a court of equity. (Pollock Eq. Juris. 392; 2 Pom. Eq. Juris. § 845; *Welles* v. *Yates*, 44 N. Y. 525; *Bush* v. *Hicks*, 60 N. Y. 298.)

*William G. Peckham* and *John De Witt Warner* for Augustus D. Shepard et al., respondents. Either the maxim *res adjudicata* or the maxim *stare decisis* should apply conclusively. (*Ehle* v. *Bingham*, 7 Barb. 497; *Miller* v. *Manice*, 6 Hilt. 122; *Lawrence* v. *Hunt*, 10 Wend. 85.) The dismissal should be affirmed because, while the complaint and the procedure are to declare a trust as to numerous grantees, whether near or remote, only the first deed is anywhere attempted to be reformed. (*O'Reilly* v. *N. Y. El. R. R. Co.*, 148 N. Y. 353; *Sutro* v. *Manh. Ry. Co.*, 137 N. Y. 594.) The *laches* of the Western Union and the fact that the Manhattan is clearly *dominus utriusque litis* should deny equity here. (1 Perry on Trusts, §§ 229–231; 8 Wait's Act. & Def. 452; 5 Wait's Act. & Def. 439, § 1.) A grantor may not impeach the essential grant or any part thereof by alleging a trust for the grantor's use and benefit. (*Kimball* v. *De Grauw*, 9 N. Y. S. R. 340; *Wadd* v. *Hazelton*, 137 N. Y. 219; 27 Am. & Eng. Ency. of Law, 25, note 2.) This reservation was utterly void for any purpose. (*Shepard* v. *Manh. Ry. Co.*, 131 N. Y. 224.) The damage of 1867 or 1888 is, as a matter of law, a totally different thing from the damage of 1890 or 1901. (*Reed* v. *State*, 108 N. Y. 414; *Tallman* v. *Met. El. R. R. Co.*, 121 N. Y. 124; *Newman* v. *Met. El. Ry. Co.*, 118 N. Y. 625; *Sutro* v. *Manh. Ry. Co.*, 137 N. Y. 594; *Hutton* v. *Met. El. Ry. Co.*, 19 App. Div. 245; *Lindenheim* v. *N. Y. El. R. R. Co.*, 28 App. Div. 171; *Stokes* v. *Manh.*

*Ry. Co.*, 47 App. Div. 59 ; *Matter of Mayor, etc.*, 17 Barb. 617 ; *Graham* v. *C. & N. R. R. Co.*, 10 Am. Rep. 60 ; *Smith* v. *Phillips*, 8 Phil. Rep. 10.)

*Michael H. Cardozo* for George W. Tubbs et al., respondents. The easement cannot be separated from the fee, and a conveyance of the fee necessarily carries with it the easement ; the easement is appurtenant to the land and passes with a conveyance of it as appurtenant thereto. The cause of action for an injunction rests only in a present owner ; a former owner can maintain an action for the damages only that he has sustained while he was such owner. The cause of action of the present owner is because of the injury he sustains by reason of the road as it is operated to-day ; the cause of action resting in a former owner is because of the operation of the road as it was operated when he was the owner to the injury of his building as it then existed. (*Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559 ; *Pegram* v. *N. Y. El. R. R. Co.*, 147 N. Y. 135 ; *Foote* v. *Met. El. Ry. Co.*, 147 N. Y. 367.) The reservation of the right to future damages is repugnant to the grant ; it is void even as against the immediate purchaser ; it is still more clearly void as against a subsequent grantee. No trust can be implied, because the trust would be illegal. It would involve an unlawful restriction upon the free alienation of land. (*De Peyster* v. *Michael,* 6 N. Y. 467 ; *Overbagh* v. *Patrie*, 8 Barb. 28 ; 6 N. Y. 510 ; Gray on Restraints on Alienation, § 25 ; 4 Kent's Comm. 131 ; *Lovett* v. *Kingsland*, 44 Barb. 560 ; 35 N. Y. 617 ; *Mandelbaum* v. *McDonnell*, 29 Mich. 78 ; *Plumb* v. *Tubbs,* 41 N. Y. 442 ; *Hill* v. *Tupper*, 2 H. & C. 121 ; *Dennison* v. *Taylor*, 15 Abb. [N. C.] 439 ; *Pond* v. *Met. El. Ry. Co.*, 112 N. Y. 186 ; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98.) The proof in this case shows, without contradiction, that the only agreement between the parties was that which was found in the contract which preceded the deed of June 4, 1888, and such deed. (*Pappenheim* v. *Met. El. Ry. Co.*, 128 N. Y. 436 ; *Kerno-*

*chan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *Nat. Bank of Deposit* v. *Rogers*, 166 N. Y. 391; *Anderson* v. *Blood*, 152 N. Y. 285; *F. Nat. Bank* v. *Nat. B. Bank*, 156 N. Y. 459; *Pond* v. *Met. El. Ry. Co.*, 112 N. Y. 187; *Galway* v. *Met. El. Ry. Co.*, 128 N. Y. 132; *Holmes* v. *Gilman*, 138 N. Y. 369; *Patrick* v. *Metcalf*, 37 N. Y. 332.) There can be no reformation of the reservation on the ground of mutual mistake. (*Curtis* v. *Albee*, 167 N. Y. 360; *Greene* v. *Smith*, 160 N. Y. 533; *Leavitt* v. *Palmer*, 3 N. Y. 19; *Lyons* v. *Richmond*, 2 Johns. Ch. 51; *Crosier* v. *Acer*, 7 Paige, 137; *Gilbert* v. *Gilbert*, 9 Barb. 534; *Arthur* v. *Arthur*, 10 Barb. 1; *Marble* v. *Whitney*, 28 N. Y. 308; *Jacobs* v. *Morange*, 47 N. Y. 57; *Pitcher* v. *Hennessey*, 48 N. Y. 424.)

Landon, J. The question presented by this appeal is whether, upon the facts found by the trial court, the plaintiff is entitled to a reversal of the judgment. All parties recognize the fact that the previous decisions of this court have established the law to be that the land and its easements are inseparable, and thus the grant of the land carries with it the grant of the easements. Whence it follows that the damages done or accruing to the land or its easements after the grant are recoverable by the grantee. And so we decide in the case of *Shepard* v. *Metropolitan and Manhattan Elevated Railway Companies*, involving these very damages, and under advisement when this case was argued and submitted. That is to say, as between the grantee and the trespassing defendants, the grantee is the real party in interest, no matter what agreement he has made with his grantor for the ultimate disposition of the proceeds of his recovery when adjusted by it, or realized or realizable from it. Such a judgment when recovered is assignable; its proceeds in possession of the grantee, or the right to their possession, when that right has ripened into judgment, are assignable; and thus the previous agreement to assign them when they shall have become ripened or merged into a judgment, or into possession, or the

adjudged right of possession, is a valid one. (*Field* v. *Mayor, etc., of N Y.*, 6 N. Y. 178; *Stover* v. *Eycleshimer*, 3 Keyes, 620; *Carver* v. *Creque*, 46 Barb. 507; *National Bank of Deposit* v. *Rogers*, 166 N. Y. 380.) For, in every one of these stages, it is a property right, unaffected by any quality of personal wrong, and not in contravention of good morals, or public policy. The inseparability of land from its easements is, therefore, immaterial here. We are not now dealing with the non-assignability of the easements apart from the land, but with the money about to be handed over, proceeds of the damages done to the land by a trespass upon its easements. The distinction is clear between the equitable right to the proceeds of the injury and the legal title to the thing or right injured.

Thus it was competent for the grantor and grantee to agree that a part of the consideration of the land conveyed should consist of the money damages thereafter to be recovered from the trespassers. The reservation clause in the deed, construed in the light of the facts found by the trial court showing what the parties intended to accomplish by it, may without violence to its terms be construed as a contract between the parties that the plaintiff should have as a further consideration the proceeds of the damages therein referred to. In its letter it is a reservation of " all claim or right of action " against the railroad companies for damages, past, present or future. Both parties thereby intended to agree that the plaintiff should have the benefit of the claim for damages, and the reservation of the cause of action for them was intended to give the plaintiff the remedy or means of securing them. It is manifest that as between the parties to the deed the claim to the damages was to remain, and did remain, with the plaintiff, although as between the grantee and the railroad company the right to the cause of action to recover them passed to the grantee. Thus the grantee had the right to sue for and recover the damages, not however for himself, but for his grantor.

It is not necessary to reform such a contract. Equity will

never permit a dishonest advantage to be gained under a technical rule of law, or tolerate that a purchaser shall keep for himself, against his grantor, the proceeds of rights which he did not pay for, or intend to purchase, but on the contrary expressly agreed should belong to his grantor. (*Thurber* v. *Chambers*, 66 N. Y. 42.) Equity should not permit the substance of such a contract to be defeated because of an unhappy attempt to confer upon the grantor complete power to realize upon it without recourse to the grantee. Circumstances and the acts of the grantee have compelled such recourse, and equity demands that the grantee shall respond.

In such case, when any act of the parties, or either of them, is essential to carry out their intention as it may appear from the provisions of a contract, the stipulation or agreement for the performance of such act will be deemed within the provisions of such contract as though expressed therein. (*Jugla* v. *Trouttet*, 120 N. Y. 27; *National Bank of Deposit* v. *Rogers, supra.*) Equity looks to the substance of things, and will carry out this contract in its spirit and intention as the findings of the trial court have established it. Equity, when it is needful, always inquires into the consideration, and for that purpose does not stop at the letter of the instrument, but goes behind it, in all cases between grantor and grantee and such of their assigns as have notice of the facts. (*M'Crea* v. *Purmort*, 16 Wend. 460; *Halliday* v. *Hart*, 30 N. Y. 474, 494.) The defendant Shepard had full notice of the facts, and thus stands in the shoes of Tubbs, the original grantee. (*Hodge* v. *Sloan*, 107 N. Y. 244; *Gibert* v. *Peteler*, 38 N. Y. 165; *Acer* v. *Westcott*, 46 N. Y. 384.) Upon the facts the defendant Shepard *ex æquo et bono* has no right to withhold the proceeds of his recovery from the plaintiff. If he receives the proceeds, he does so as trustee for the plaintiff.

It is well settled that when one person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another, a trust arises in favor of the latter person commensurate with his interest in the sub-

ject-matter. Such trusts are known as implied or resulting trusts, and are not prohibited by our Revised Statutes. It is only where the existence of the trust is dependent upon the mere will of the parties that it must be created by express language and must be one of the four express trusts permitted by the Revised Statutes. (*Foote* v. *Bryant,* 47 N. Y. 545.) It should not be necessary to cite authorities in support of a proposition so consonant with common honesty and equally as simple. But this court has in a previous case found it agreeable to its sense of justice to use language very much to the purpose here. *Pegram* v. *N. Y. El. R. R. Co.* (147 N. Y. 135) was an action brought by Pegram, an abutting owner, against the elevated railroad companies to secure an injunction and damages. Upon the trial the plaintiff's evidence showed that the premises described in the complaint had been sold pending the action, to one Schortemeier. The deed to Schortemeier contained a reservation similar in its essentials to the one involved in this action. The trial court awarded to the plaintiff a judgment for money damages for the period of six years before the commencement of the action and down to the date of the conveyance to Schortemeier, and denied the injunction asked for in the complaint. The plaintiff appealed from so much of the judgment as denied the injunction; the defendants appealed from so much of the judgment as awarded any damages to the plaintiff. The judgment was affirmed by this court in an opinion by Judge GRAY containing the following language:

" But, as between the plaintiffs and Schortemeier, the reservation in the conveyance would, upon its face, operate to retain in, or confer upon, the plaintiffs certain rights which Schortemeier could not, or ought not, to disregard. * * * There need be no question as to the right of the parties to agree to make such a reservation as this. * * * If the plaintiffs had brought in Schortemeier as a party defendant in the action, the court would have been in a position to adjust the equities and rights of all the parties and to render a complete decree, which would have been binding upon each. The

equities created or arising between the plaintiffs and Schorte-meier, through the reservation in the deed, can only be effec-tively adjusted by his presence as a party to an action which had that as one of its objects. Standing, as the holder of the legal title, outside of the action, if the reservation in the plain-tiffs' conveyance to him is operative to any extent, it may be deemed to make him, as the holder of the legal title, a trustee for the plaintiffs with respect to any damages which might be recovered of the defendants, for the injury occasioned to the rental and fee value of the property, through an action brought in his name, or wherein he was joined as a party."

In order to prevent a failure of justice, the court, which shapes its judgments in the most efficient forms, may direct the payment by the defendants, the railroad companies, to the plaintiff of the amount of the judgment already recovered by the defendant Shepard against them.

Our attention is invited by the briefs of counsel to a ques-tion alleged to be based upon evidence offered by the defend-ants before the trial court and excluded. The record does not contain that evidence. Of course, there is no finding upon it. It, therefore, has no force, as a former judgment. But we are referred to *Shepard* v. *Metropolitan El. Ry. Co.* (82 Hun, 527), being the action brought to recover the damages in question, in which, we are told, this plaintiff, upon petition and affidavits, asked to intervene and be made a party for the purpose of securing the same relief in that action that it now seeks in this. The motion was denied, as the opinion states, on the merits. That must mean that in the opinion of the court upon the papers before it the plaintiff had no right to intervene and take a controlling part in that action. An appeal was taken to this court and the order affirmed. (147 N. Y. 685; *S. C.* 713.) It would require clearer evidence than any now before us to convince us that the court there found the facts to be as the trial court upon common-law evi-dence has here found them. But however the facts were there found, the question was not whether the plaintiff had a right to recover in its own action against Shepard, but whether

it had a right to seek a recovery in Shepard's action against other parties, both against him and them. We have already tried to point out the distinction between the right of recovery in this class of cases against a debtor in equity, and against a debtor's debtor in law. It was entirely discretionary with the Supreme Court to deny the motion and remand the Western Union Company to its own action. (*Foote* v. *Lathrop*, 41 N. Y. 359; *Beards* v. *Wheeler*, 76 N. Y. 213.) This discretion is simply less embarrassing when the law seems clearly to indicate how it should be exercised. The case, no doubt, should have the force of *stare decisis* upon the point of discretion involved in it, but that point is not important in this case.

The judgment should be reversed, with costs against the defendants Shepard, Tubbs, J. M. and L. N. Levy in this court and below; and, inasmuch as under the reservation in the contract of sale the damages may be apportionable, a new trial is granted.

O'BRIEN, MARTIN, VANN and CULLEN, JJ., concur; PARKER, Ch. J., and BARTLETT, J., dissent.

Judgment reversed, etc.